**STATE of Oklahoma, ex rel., Robert H. MACY, District Attorney of the Seventh Prosecutorial District, Appellee,**

**v.**

**ONE (1) PIONEER CD–ROM CHANGER, Mdl. # DRM–600–A, SER. # ML 8515021; One (1) Pioneer CD–ROM Changer, Mdl. # DRM–600–A, Ser. # ML 8515077; Four (4) Sony CD ROM Drives, Mdl. # CDU 6201–20, Ser. #'s 810593, 808759, 808986, & 806083; Two (2) Computer Power Controls, NO Model OR Ser. Number; One (1) Keyboard NMB Tec. Mdl. RTL01, Ser. # 19257111; One (1) Keyboard Maxi Switch, Mdl. # 2186002XX Ser. # 19257111; One (1) Woods Power Strip Mdl. # 417 NO Ser. #; One (1) Lonalite Power Strip, Mdl. # 417 NO Ser. #; One (1) Brooks Power Strip, Md. # T6–6 NO Ser. #; One (1) US Robotics Modem, Ser. # 0002670001732718, Mdl. # 14400; One (1) US Robotics, Ser. # 00810000–00002753; One (1) Hayes Modem Mdl. # 5100, Ser. # A00351003317; One (1) Robotics 2400 Mdl. # Unknown, Ser. # 0033–03068608; One (1) Hayes Modem, Mdl. # 5100, Ser. # A00351003311; One (1) DGI Board; One (1) Modem Robot-**

ics Ser. # 0066–16045021020891; One (1) Hayes Modem Ser. # A00141003142; One (1) Monitor Helm Eng. Mdl. # CM–414E, Ser. # 038213073; One Mimmicor Monitor, Mdl. # MM1453M1, Ser. # 90405186; One (1) Computer CPU, W/Drives, NO Ser. # OR Mdl. #; One (1) Computer CPU W/Drives, NO Ser. # OR Mdl. #, Defendant,

and

Anthony A. Davis, Claimant/Appellant.

No. 83424.

Court of Appeals of Oklahoma, Division No. 1.

June 21, 1994.

Certiorari Denied Feb. 15, 1995.

William R. Holmes, Norman, for appellant.

Gretchen Crawford, Oklahoma City, for appellee.

## MEMORANDUM OPINION

HANSEN, Judge:

Appellant, One (1) Pioneer CD–ROM changer, et al. and Anthony Davis, (Davis), seek review of the trial court's order which denied Davis' motion to dismiss and which granted Appellee, the State of Oklahoma's, cross-motion for summary judgment. The State brought this action pursuant to 21 O.S. 1991, § 1040.54, seeking forfeiture of certain computer equipment owned by Davis, alleging the equipment was used by Davis to prepare, photograph, print, sell, exhibit, publish, distribute, display, copy or record obscene material.[1]

Davis filed his motion to dismiss pursuant to 12 O.S.1991, § 2012(B)(6). He denied the equipment was used to distribute or publish obscene material and argued the computer equipment to be forfeited was seized under an unauthorized, warrantless search and that as fruit of an unlawful search, must be suppressed in this civil proceeding. He further maintains the search and seizure were conducted contrary to the Electronic Communications Privacy Act, 18 U.S.C. § 2510 et seq., and the Privacy Protection Act, 42 U.S.C. § 2000aa et seq. Davis attached to his Answer, a copy of the search warrant affidavit, the search warrant, an inventory of the seized equipment, the affidavit of Davis, and a copy of a letter from Davis' attorney to the Oklahoma City Police Department.

As required by 12 O.S.1991, § 2012(B), Davis failed to state separately each omission or defect in the State's petition and therefore, has waived review of the denial of his dismissal motion on the basis the petition was defective.[2] However, under 12 O.S.1991, § 2012(B)(6), if a party submits evidentiary matter outside the pleading, the motion shall be treated as one for summary judgment and all parties shall be given an opportunity to present all material pertinent to such motion. Accordingly, Davis' motion to dismiss will be treated as a motion for summary judgment.

In its response to the motion to dismiss, the State listed certain material facts which were not disputed by Davis. The State attached pages of transcript of the preliminary hearing and copies of the search warrant affidavit, search warrant information, and criminal docket. Under Rule 13, Rules for District Courts, 12 O.S.; Ch. 2, App. 1, all material facts set forth in the statement of the movant which are supported by admissible evidence shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the adverse party which is supported by admissible evidence.

In our review of an order granting summary judgment, we must determine if the evidentiary matter supporting, or opposing, the motion reflect any substantial controversy as to any material fact. *Flanders v. Crane*, 693 P.2d 602 (Okla.1984). Additionally, it must appear reasonable people exercising fair and impartial judgment could not reach differing conclusions upon the undisputed facts. *Hargrave v. Canadian Valley Electric Cooperative*, 792 P.2d 50, 55 (Okla. 1990).

1. The notice of forfeiture indicates the State did not seek forfeiture of any information unrelated to obscene materials held on any diskette, CD Rom back-up tapes, and/or hard discs.
   The inventory of all items seized from Davis's business on July 20, 1993, shows the following items were seized:
   1. 57 CD–ROM discs
   2. 9 modems wt/hardware and cabinet
   3. 2 CD–ROM changers
   4. CD–ROM drives
   5. 2 keyboards
   6. 2 monitors
   7. 4 powerstrips
   8. 2 powerboards
   9. Miscellaneous business records
   10. 2 computers

2. In his Response to the State's motion for summary judgment, Davis asked the trial court to consider his motion to dismiss as a motion for summary judgment if the court found the motion to dismiss was "improperly framed".

The undisputed facts show Oklahoma City Police Officer Gracy had information a person named "Tony" was distributing obscene materials from a business called Teleco of America. On June 4, 1993, Gracy, acting undercover, purchased a CD ROM disc for $99.00 from Davis and Davis indicated the disc contained material illegal in the State of Oklahoma. During this meeting, Davis further indicated he had the same type of material on a "network" in the back room and that individuals could "dial in and access" the obscene materials. The meeting was interrupted and Gracy never saw the network. On July 2, 1993, Gracy again purchased a CD ROM disc which the officer subsequently determined did not violate obscenity laws. On July 12, 1993, he returned the disc in exchange for another disc he believed to violate state obscenity laws. These two discs were subsequently viewed by District Court Judge Virgil Black, who determined the discs contained "obscene material", as defined under § 1024.2 of Title 21. Upon the affidavit of officer Gracy, a search warrant for the Teleco of America business premises was issued.

On July 20, 1993, Oklahoma City police officers executed the search warrant. Davis showed the officers a box of discs for which he believed they were looking. During the search, the officers discovered a large computer system. A monitor on the system displayed the words "viewing" and/or "copying" with a description such as "lesbian sex" and/or "oral sex". The officers believed individuals outside the business were accessing the information from the computer. The officers also discovered four more "adult" CD ROM discs in the drive unit attached to the system. Approximately 2000 other compact discs were left at Davis's business because Davis informed police they did not contain pornographic material. Davis was charged by Information with Distribution of Obscenity, Trafficking Obscenity, and Using a Computer to Violate 21 O.S.1991, § 1958. The trial judge presiding over the criminal case determined the CD ROM discs which were housed in the CD ROM disc changer contained materials which violate state obscenity laws. At the time of the State's motion for summary judgment in this forfeiture action, no evidence had been suppressed in the criminal case, nor was a suppression motion pending.

■ In his first proposition, Davis maintains the equipment was illegally seized because the Oklahoma City police officers had knowledge he operated a "network" where people could access obscene materials yet the officers failed to mention this to the judge who issued the warrant. Because such items were not included in the warrant, he reasons, they could not be seized. Testimony at the preliminary hearing suggests Davis told the officers of the existence of a network but that they had never viewed it and therefore could not describe it for purposes of a warrant.

■ Davis' attack against the warrant is that it is too general. In *Moore v. State*, 788 P.2d 387 (Okla.Cr.1990), the Oklahoma Court of Criminal Appeals stated:

To ensure that a search does not extend beyond its authorized purpose and that law enforcement officers do not engage in exploratory rummaging through personal belongings, a search warrant must describe with specificity and particularity, the place to be searched and the items to be seized.

*Moore*, at 395–396. A description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit. *Id.* The fact that articles outside the scope of the warrant are seized does not necessarily convert it into a general warrant. *Caffey v. State*, 661 P.2d 897 (Okla.Cr.1983).

■■ The search warrant described the CD ROM discs which contained "obscene material" and also described *"equipment*, order materials, papers, membership lists and other paraphernalia pertaining to the distribution or display of pornographic material in violation of state obscenity laws." Although the affidavit submitted in support of the warrant does not mention Davis' statements regarding a network, the testimony of the police officers shows that at the time the warrant was executed, the computer system was one integral system, that it housed four discs containing obscene material, and that a monitor was displaying a screen indicating persons were accessing the computer at the time of the search and viewing or copying files called "lesbian sex" and/or "oral sex". The

warrant specifically authorizes the seizure of equipment pertaining to the distribution or display of pornographic material. This description is as specific as the circumstances and the nature of the activity under investigation permitted. Furthermore, the testimony shows the equipment, and its possible criminal use, were in plain view at the time the officers executed the warrant.[3] As discussed in *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), discovery of evidence under the plain view exception to the 4th Amendment exclusionary rule need not be "inadvertent". Thus, Davis's contention that the officers' prior knowledge of the existence of a network made the seizure of such equipment "not inadvertent" and therefore not coming within the plain view doctrine, is without merit.

■ Davis next argues the seized equipment cannot be used in or be the res of a civil forfeiture proceeding because the seizure of the equipment violated his 4th Amendment rights. As discussed above, Davis has failed to show the seizure of the equipment violated his constitutional rights.

Further, there is nothing in the record to show the evidence was suppressed in the related criminal case. Accordingly, Davis's argument the equipment is inadmissible in this civil forfeiture proceeding is without merit.

■ Next, Davis argues the computer equipment could not be seized, searched or forfeited because it contained private communications within it. Therefore, the State should have complied with the specific warrant requirements for seizure contained in the Electronic Communications Privacy Act, or Wire and Electronic Communications Interception and Interception of Oral Communications Act, 18 U.S.C. § 2510 et seq.[4] Evidentiary material submitted by Davis shows Davis operated the "Oklahoma Information Exchange" through his company Mid–America Digital, which is a bulletin board system whereby individuals can send and receive electronic mail (e-mail) and access text and graphic files. In an affidavit, Davis states approximately 150,000 e-mail messages, some of which were private, were contained within

3. Under the plain view exception to the 4th Amendment's exclusionary rule, the initial intrusion which afforded the plain view must have been lawful and the incriminating nature of the object must be immediately apparent. *Roney v. State*, 819 P.2d 286 (Okla.Cr.1991). After *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the element of the plain view doctrine requiring an "inadvertent discovery" of the evidence is no longer required.

4. 18 U.S.C. § 2511 provides in pertinent part:

(1) Except as otherwise specifically provided in this chapter any person who—
(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—
(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or
(ii) such device transmits communications by radio, or interferes with the transmission of such communication; or
(iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or

transported in interstate or foreign commerce; or
(iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or
(v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States;
(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or
(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

\*    \*    \*    \*    \*    \*

the system at the time of seizure. As earlier noted, in its forfeiture petition, the State gave notice that it was not seeking forfeiture of any information unrelated to obscene materials held on any diskette, CD ROM backup tapes, and/or hard discs. The State also offered to return any e-mail or other private communications as long as the information did not compromise the criminal case. The officers testified they did not know of the existence of the e-mail at the time of seizure, although Davis's computer expert opined anyone purporting to have knowledge of bulletin board systems would know of their function of sending and receiving electronic messages known as e-mail.

Davis maintains the Oklahoma City police department "intercepted" his electronic mail and that therefore the specific requirements for warrants for the seizure of such communications should have been, but were not, followed. He cites 18 U.S.C. § 2518 and § 2510(4) to support his proposition.

■ Davis has failed to show that the lawful, physical seizure of the *computer equipment* which was allegedly used to distribute obscene material, and which contained private communications in the form of e-mail, constitutes an "interception" as that term is contemplated in the Wire and Electronic Communications Interception and Interception of Oral Communications Act.[5] See *Steve Jackson Games, Inc. v. United States Secret Service*, 816 F.Supp. 432, 441 (W.D.Tex.1993). Even if the seizure of the computer equipment constituted an "interception" of the electronic communications, Davis has not shown with persuasive authority, that such interception is a bar to forfei-

ture of the computer equipment which held the communications. This assignment of error is without merit.

■ Finally, Davis argues the search and seizure were conducted contrary to the Privacy Protection Act's requirement that certain materials be obtained by subpoena, and that without such subpoena, Davis's First Amendment rights were violated. The Privacy Protection Act of 1980, 42 U.S.C. § 2000aa et seq., provides in part:

(a) Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any *work product materials* possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce; but this provision shall not impair or affect the ability of any government officer or employee, pursuant to otherwise applicable law, to search for or seize such materials, if—

1) there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate:

. . . .

\*　　\*　　\*　　\*　　\*　　\*

■ Subsection (b) of Section 2000aa makes it unlawful for a government officer or employee to search for or seize documentary materials *other than work product materials*.[6] 42 U.S.C. § 2000aa–6 provides that a person aggrieved by a search for or seizure

---

**5.** As defined in 18 U.S.C. § 2510(4), "intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.

**6.** Documentary materials means "materials upon which information is recorded, and includes, but is not limited to, written or printed materials, photographs, motion picture films, negatives, video tapes, audio tapes, and other mechanically, magnetically or electronically recorded cards, tapes, or discs, but does not include contraband or the fruits of a crime or things otherwise criminally possessed, or property designed or intended for use, or which is or has been used as, the means of committing a criminal offense."

Work product materials means "materials, other than contraband or the fruits of a crime or things otherwise criminally possessed, or property designed or intended for use, or which is or has been used, as the means of committing a criminal offense, and—

(1) in anticipation of communicating such materials to the public, are prepared, produced, authored or created, whether by the person in possession of the materials or by any other person;

(2) are possessed for the purposes of communicating such materials to the public; and

(3) include mental impressions, conclusions, opinions, or theories of the person who pre-

of materials in violation of this Act, shall have a civil cause of action for damages. Liability under the Privacy Protection Act stems from seizure of the "work product materials" or "documentary materials". *Steve Jackson Games, Inc. v. United States Secret Service,* 816 F.Supp. 432 (W.D.Tex. 1993).

Davis maintains that because the seized equipment contained 500 megabytes of non-obscene software that was to be pressed into a compact disc to be published by Mid-America Digital, in addition to other non-obscene databases in the bulletin board system, the officers were required to seize the computer equipment using the heightened seizure requirements in § 2000aa(b). Other than citing the Act itself, Davis has presented no authority to support his contention the seizure of the *computer equipment and hardware,* from which police officers had probable cause to believe Davis was distributing or publishing obscene material, was unlawful under this Act because the equipment also contained or was used to disseminate potential "documentary materials".[7] Nor has he shown that a violation of the Act results in a conclusion an otherwise lawful search and seizure becomes unlawful and that equipment seized in connection with a crime, may not be forfeited under State law. We express no opinion regarding whether Davis may have a viable civil cause of action under the Privacy Act.

The State prayed alternatively to its request for summary judgment, that the civil proceeding be stayed pending the outcome of the related criminal proceeding. Because we affirm the trial court's order granting summary judgment to State, the request for a stay need not be considered.

The judgment of the trial court is accordingly, AFFIRMED.

JONES, P.J., and ADAMS, J., concur.

---

pared, produced, authored, or created such material."

**7.** In his brief, Davis maintains "a number of *First Amendment protected items were seized*" in violation of the Act. From an examination of his affidavit, it appears he is referring to approximately 150,000 electronic mail messages and 12 databases.