1999 OK CIV APP 132

**Stephen J. HEYMAN and Stephen E. Jackson, Plaintiffs/Appellants,**

v.

**GABLE, GOTWALS, MOCK, SCHWABE, KIHLE, GABERINO, A Professional Corporation d/b/a Gable & Gotwals, Defendant/Appellee.**

No. 92371.

Court of Civil Appeals of Oklahoma, Division No. 4.

June 29, 1999.

Rehearing Denied Aug. 30, 1999.

Certiorari Denied Nov. 23, 1999.

---

William A. Johnson, James P. Linn, Drew Neville, Linn & Neville, P.C., Oklahoma City, for Appellants.

Marthanda J. Beckworth, Michael P. Atkinson, Atkinson, Haskins, Nellis, Boudreaux, Holeman, Phipps & Brittingham, Tulsa, for Appellee.

## OPINION

RAPP, P.J.

¶ 1 This appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(a)(2), 12 O.S.Supp. 1998, ch. 15, app. 1, after the trial court's November 24, 1998, order dismissed with prejudice the Plaintiff/Appellants' claim of legal malpractice against the Defendant/Appellee law firm, pursuant to 12 O.S.1991, § 2012(G).

¶ 2 The facts herein are straightforward and are set forth only in such detail as required for this Opinion. Stephen Heyman and Stephen Jackson (Clients) and Jackson's brother and a third person (Partners) were co-owners of a profitable gas gathering business. Partners wanted to sell the company to the highest bidder, but Clients did not. However, Clients agreed to sell the company if a certain minimum bid was obtained from a potential buyer. In anticipation of the sale, Clients hired a law firm, trial court defendant, Gable, Gotwals, Mock, Schwabe, Kihle, Gaberino, (the Firm) to prepare a "standstill agreement" (SA). The agreement specified that if a contractually defined minimum bid was received within 120 days, the Partners and Clients would sell the company. If no bids met the contractual specifications of the SA, a buy/sell agreement between the Clients and Partners would go into effect, giving each side the opportunity to purchase the other's interest in the company.

¶ 3 A purchase bid was received which ostensibly met the SA requirements. The Partners desired to accept the bid. However, the Clients, relying on the SA language and on the Firm's advice, decided the bid did not meet the contractual specifications. The Clients refused to attend a board meeting to accept the bid, thereby blocking the proposed sale and purchase. The SA expired and the Clients and the Partners ultimately engaged in a bidding war for control of the company. The Clients successfully outbid the Partners and took control of the company under the buy/sell agreement. The Partners, as a result of the Clients' actions, were paid less for their shares of the company than they would have received had they been able to accept the high bid under the SA.

¶ 4 Shortly after the execution of the sale agreement between the Clients and the Partners, the Partners contended the SA was ambiguous and that the Clients had no intention of selling the business, thereby engaging in fraud in their effort to gain control of the company. The Partners then filed suit against the Clients in 1993, alleging breach of the SA and fraud. The suit was tried to a jury, which found in favor of the Partners on both of their claims of breach of contract and fraud. The Clients interposed a motion for judgment non obstante veredicto (JNOV) on the fraud issue, which the trial court sustained. The trial court also ordered a remittitur of damages on the breach of contract claim.

¶ 5 The Clients prosecuted an appeal and the Partners counter-appealed. The Oklahoma Court of Civil Appeals, Division III, in Appeal No. 86,132, affirmed the breach of contract judgment, and, after concluding substantial evidence of fraud existed, reversed the trial court's JNOV and remanded the matter with instructions to reduce both claims to judgment. The Oklahoma Supreme Court denied certiorari and issued its mandate on November 20, 1997.

¶ 6 The Clients subsequently filed suit against the Firm on March 6, 1998, alleging legal malpractice in the drafting of the SA. The Clients' petition and amended petition alleged the Clients had been sued and suffered damages based on: (1) the Firm's draftsmanship of the SA resulting in an ambiguous SA; (2) their acts of reliance on the Firm's advice; and (3) its representation during trial.

¶ 7 The Firm filed a motion to dismiss, which was granted by the trial court in a minute order on July 20, 1998. The Clients amended their petition by leave of Court. The Firm filed another motion to dismiss, which was again granted with leave to amend in a minute order filed November 3, 1998. This time the Clients apparently decided to stand on their amended petition and did not file a second amended petition. The minute order of November 3, 1998, was memorialized in an order filed November 24, 1998. The Clients appeal.

■ ¶ 8 We first note that the Firm's motion to dismiss is here treated as a motion . for summary judgment because evidentiary material was presented to the trial court.[1]

¶ 9 The Clients herein raise a number of issues in this matter, while the Firm basically relies upon two principal lines of defense: (1) the statute of limitations based on an assertion the Clients did not timely bring their lawsuit, and (2) the Clients, having been determined by a jury verdict to have committed fraud, should not, as a matter of public policy, be allowed to be indemnified for their fraudulent actions via recovery from the Firm for its representation of Clients.

¶ 10 The statute of limitations defense, while appearing to have some merit, is not the dispositive issue in this appeal.

■ ¶ 11 The dispositive issue is apparently one of first impression in this state: whether the Clients' fraud taints their action so as to deny them the requested relief and justify the trial court's grant of the Firm's motion to dismiss. We conclude it does.

¶ 12 The jury found the Clients committed acts of fraud, and awarded monetary damages to Partners as a direct and proximate result of Clients' fraud. This judgment is now final. The Clients' fraud was independent of the alleged negligent drafting of the SA and of the trial representation by the Firm. Indeed, the record shows that the Clients' fraud—the commission of which damaged the Partners—preceded both the drafting of the allegedly defective SA and the trial representation. Thus, the damages recovered by Partners from Clients were proximately caused by the Clients' fraud and not by the Firm. It would be contrary to public policy to allow the Clients here to benefit from their own confirmed fraud and recover a monetary judgment from the Firm to indemnify them for their fraud. *See Saks v. Sawtelle, Goode, Davidson & Troilo*, 880 S.W.2d 466 (Tex.Ct.App.1994); *Mettes v. Quinn*, 89 Ill.App.3d 77, 44 Ill.Dec. 427, 411 N.E.2d 549 (1980). We therefore conclude the trial court correctly granted judgment to the Firm.

¶ 13 The trial court correctly granted the proffered motion to dismiss. The trial court's judgment is affirmed.

¶ 14 AFFIRMED.

REIF, J. (sitting by designation), concurs, and STUBBLEFIELD, J. (sitting by designation), concurs in result.

STUBBLEFIELD, J. (sitting by designation), concurring in result.

---

1. Under 12 O.S.1991, § 2012(B)(6), if a party submits evidentiary matter outside the pleading, the motion shall be treated as one for summary judgment and all parties shall be given an opportunity to present all material pertinent to such motion. Accordingly, the motion to dismiss will be treated as a motion for summary judgment. *State ex rel. Macy v. One (1) Pioneer CD–ROM Changer, MDL. No. DRM–600–A, Ser. No. ML 8515021*, 1994 OK CIV APP 100, ¶ 3, 891 P.2d 600, 603.

¶1 I agree with the result reached by the majority, although I do so based on a far different analysis of the issues of this case.

¶2 First, I cannot assent to the insinuation that the statute of limitations might also bar Plaintiffs' claim. I see no reason that the rule espoused by the court in *Stephens v. General Motors Corp.,* 1995 OK 114, 905 P.2d 797, would not apply, as Plaintiffs assert. Under the *Stephens* rationale, this case was timely filed where it was brought within two years of certiorari being denied after another division of this court rendered its decision on appeal of the judgment that forms the underpinnings of this malpractice action.

¶3 I also reject the conclusion that the affirmance of the lower court is dictated by application of a public policy rule. I note that there is little discoverable authority purporting to determine such cases on the basis of public policy.

¶4 The *Saks* case, cited by the majority, is inapposite. *Saks* involves criminal defendants, who had been convicted of bank fraud. In that instance, a "client who contends that his willful criminal act or criminal conviction directly resulted from an attorney's negligent services, [cannot] sue that attorney for legal malpractice." 880 S.W.2d at 469.

¶5 The other case cited by the majority, *Mettes v. Quinn,* 89 Ill.App.3d 77, 44 Ill.Dec. 427, 411 N.E.2d 549 (1980), does stand for the proposition that the courts will not aid a party in benefitting from her fraud. However, my cursory search has not resulted in discovery of the application of such a rule in Oklahoma.

¶6 Oklahoma has long held to the rule that *equity* will not aid one who has been guilty of unlawful or inequitable conduct. *Camp v. Camp,* 196 Okla. 199, 163 P.2d 970 (1945). However, such a rule generally would not impede a quest for *legal* relief, such as a claim based on alleged professional negligence.

¶7 My analysis of the issues leads me to conclude that the question presented is not one of a public policy bar or mandate but, instead, a classic causation analysis. The issue is whether Plaintiffs state a cognizable claim for relief in light of the given fact that they have been judicially determined to have engaged in fraud. In that regard, I do not believe that a plaintiff's fraud alone would, as a matter of law, relieve a defendant of potential liability for professional negligence, unless, without factual dispute, the fraud was the sole cause of a plaintiff's damages.[2]

¶8 Thus, I have reviewed the record to determine whether the uncontroverted facts dictate that Plaintiffs' actions resulted in the judgments against them or whether the alleged negligence of Defendants could have been a causative factor. I conclude that the district court verdict and judgment in the underlying civil action and the judgment on appeal to Division 3 of this court dictate a conclusion that it was Plaintiffs' fraud that resulted in both the fraud and breach of contract judgments against them.

¶9 From examination of the jury instructions, the verdicts, the lower court's judgment and the decision in appeal No. 86,132, the sole conclusion that can be reached is that the fraud alleged against these Plaintiffs was promissory fraud. Thus, although there were separate claims of fraud and breach of contract made against these Plaintiffs in the earlier lawsuit, the breach of contract also was based on allegations of Plaintiffs' original fraudulent intent not to abide by the contract. The district court verdict and judgment impliedly represent a finding of such specific fraudulent intent.[3]

¶10 Based on this analysis, the purported negligence of Defendants in drafting the contract would have been of no consequence, because Plaintiffs had no intention to honor the contract. Thus, I agree with the affirmance of the lower court's judgment.

---

2. *Hyden v. McCormick, Forbes, Caraway & Tabor,* 115 N.M. 159, 848 P.2d 1086 (App.1993).

3. In Case No. 86,132 our sister court clearly found evidence supporting the implied jury finding of a deceitful intent of these Plaintiffs in making the "standstill agreement."