## HUNTER v. WHEATE.

(Court of Appeals of District of Columbia. Submitted February 12, 1923. Decided May 7, 1923.)

### No. 3859.

1. **Abortion ⊜⟞16—Woman is not relieved from civil liability for participating in illegal act.**

Though Code, § 809, is construed so as not to render the woman on whom an abortion is performed criminally responsible, it was not intended to give her immunity in civil actions from the legal consequences of her participation in illegal or immoral acts.

2. **Action ⊜⟞4—Relief not granted, where cause of action is based on illegal act.**

The rule that, where a cause of action is founded on an illegal or immoral act, no court will extend its relief to either party, applies whether the act is performed in the execution of a contract or not.

3. **Abortion ⊜⟞16—Woman consenting to illegal operation cannot recover for negligence in performing it.**

An abortion is both illegal and immoral, regardless of whether the woman is quick with child or not, and a woman who consents to the performance of such operation on herself cannot recover for the negligence of the surgeon who performed it, any more than he could recover his fee for performing the operation, if he were free from negligence.

Appeal from the Supreme Court of the District of Columbia.

Action for malpractice by Pearl L. Wheate against M. Hunter. Judgment for plaintiff, and defendant appeals. Reversed and remanded, with directions.

A. D. Smith and Henry M. Fowler, both of Washington, D. C., for appellant.

James T. Lloyd, of Greensboro, N. C., and C. Larimore Keeley, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

BARBER, Acting Associate Justice. This is an appeal from the judgment of the Supreme Court of the District on a verdict against the appellant, who is a licensed practitioner of medicine and surgery.

The declaration is in two counts, the first in substance alleging a contract between the appellant and appellee to produce a miscarriage upon her and to give her proper treatment and care in connection therewith, averring negligence on appellant's part in the performance of the contract. The second counts upon the same transaction without alleging a contract and charges the same negligence.

A brief reference to the testimony of appellee is all that is necessary, so far as the material facts are concerned. Therefrom it appears that she is a married woman, the mother of a child some 12 years old. In January, 1920, she found herself about 3½ months along in pregnancy. Her husband was in poor health, much older than she, and she was afraid the child would not be right, and wanted to know what the appellant would tell her. She did not consult her regular family physician, but went to appellant because she had been told he was that kind of doctor. When she first called upon him, he refused to perform an operation upon her or examine her, except in the presence of her husband, and on the following day, which was Sunday, she took her husband to appellant's office; they consulted with appellant, who told her that she could carry the child, and also that he did not think she could. She told him she was afraid the child would not be born right. Her husband first objected to the operation, and finally, when he saw that she wanted it done and the appellant said it was all right to have it done, he gave his consent. The operation was thereupon performed by the appellant and resulted in a miscarriage on the following Wednesday. Appellant treated her in connection with the matter until the following Sunday, when he was discharged.

It is quite clear from the recited and other testimony given by the appellee that she fully understood the purpose of the operation and consented thereto. Were it material in this case, we would incline to the view that she was neither reluctant nor unwilling to have the operation performed. There was no evidence tending to show, nor is it claimed, that the miscarriage was produced because it was necessary to preserve her life or health, and the evidence tended to show, as the jury evidently found, that in performing the operation and in his subsequent professional treatment of her the appellant was negligent.

Appellant introduced no testimony in his behalf, but at the close of appellee's evidence moved for a directed verdict in his favor on the ground that the action was brought for the recovery of damages alleged to have accrued as the result of the carrying into effect of an illegal contract. This defense was also fully presented by various requests to charge, and by motions made at the close of the charge as given, all of which were denied. The learned court below submitted the case to the jury upon the theory that the relation of physician and patient subsisted between appellant and appellee, and that therein it was the duty of appellant to exercise reasonable care and skill as a physician, for failure to do which he would be liable.

[1] Section 809 of the District Code in substance prohibits the doing of any act with intent to procure a miscarriage of any woman, unless when necessary to preserve her life or health, and under the direction of a competent licensed practitioner of medicine. As stated,

there is no claim here that such necessity existed. In Thompson v. United States, 30 App. D. C. 352, 12 Ann. Cas. 1004, this court held, in common with what seems to be the views of most other courts under similar statutes, that the woman upon whom a miscarriage is produced is not criminally liable and is not to be regarded as an accomplice; in other words, that the penal provision of the statute applies only to persons whose act produced the miscarriage upon her, and that the woman herself is to be regarded as the victim.

It is apparent that the charge of the court below was induced by its understanding that in the Thompson Case the court regarded such a woman as guiltless of any immoral or illegal act. In that case it was not the intention of this court to go further than to pass upon the admissibility, credibility, and legal effect of the testimony of a woman in a criminal prosecution against the party charged with commission of abortion upon her, and it was not intended thereby to suggest that she had any immunity in civil actions from the legal consequences of her participation in illegal or immoral acts.

[2] It has long been the law that, where an action is founded upon an unlawful contract, the court will not interfere to relieve either of the parties thereto in an action against the other from the results thereof. In Higgins v. McCrea, 116 U. S. 671, 6 Sup. Ct. 557, 29 L. Ed. 764, it was said:

"No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If from the plaintiff's own stating, or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So, if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would then have the advantage of it."

This was quoted from an earlier case. The authorities in support of this proposition are numerous, and only a few are referred to. McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117; Continental Wall Paper Co. v. Voight & Sons, 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486; 1 Corpus Juris, 958.

This rule applies, whether the act is performed in the execution of a contract or not. In other words, it applies to transactions as well as to contracts, and hence the suggestion of appellee that the recovery here was upon the second count in the declaration as for a tort, regardless of the contract, is of no avail. If the act out of which the cause of action arises is immoral or illegal, the courts will not grant relief. The Florida, 101 U. S. 37, 25 L. Ed. 898; Riggs v. Palmer, 115 N. Y. 506, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819; Levy v. Kansas City, Kansas, 168 Fed. 524, 93 C. C. A. 523, 22 L. R. A. (N. S.) 862. In the last cited case, opinion by Sanborn, Judge, the authorities are exhaustively examined. It was said:

"But the maintenance of actions to recover moneys or property lost, or damages sustained, through transactions or contracts wherein the plaintiffs were guilty of moral turpitude, or of the violation of a general law

passed to effectuate a public policy, is prohibited by this rule, as well as the maintenance of actions upon contracts of that nature."

[3] It is hardly necessary to say that in voluntarily participating in the miscarriage upon herself the appellee engaged, not only in an unlawful act, but also in one which was immoral, without regard to the question of whether or not she was quick with child. In 1 Corpus Juris, 313, it is said:

"But according to the great weight of authority, although the interruption of pregnancy has always been regarded as highly offensive to good morals and injurious to society, it never was an indictable offense at common law to commit abortion before the woman had become quick with child."

A test sometimes applied by the courts in determining whether an action of this character will lie is to inquire whether, if the defendant were the plaintiff, a recovery would be allowed? Can it be believed that, if the operation in this case had been performed without negligence on the part of Hunter, and had been successful in every sense, and an action had been brought by him against Wheate to recover for his services in connection therewith, that such recovery would be allowed?

The court below should have directed a verdict for the defendant, and its judgment is therefore reversed, with costs, and remanded, with directions to grant a new trial in accordance with the views expressed in this opinion.