MARY METTES, Plaintiff-Appellant, *v.* RICHARD E. QUINN, Defendant-Appellee.

Third District   No. 80-55

Opinion filed October 7, 1980.

Robert M. Eschbach and Alan R. Howarter, both of Ottawa, for appellant.

Lyle W. Allen, of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

In August 1968, the conservator of the estate of Edna Keach, an incompetent, brought suit in the Circuit Court of Peoria County against Adele Hoffman. The conservator sought to recover funds allegedly owned by Keach which had been converted by Hoffman, and in the same

action the conservator sought to set aside a certain deed from Keach to Hoffman wherein the grantor reserved a life estate for herself. This lawsuit, the first of two which provide the factual background for the instant case, was terminated with the death of the incompetent on May 21, 1979. Hoffman was the sole beneficiary of the incompetent's estate. The second lawsuit was filed in August 1971 by Adele Hoffman and named Mary A. Mettes and William Stiles as defendants. According to allegations in that 1971 complaint, Hoffman received advice from Mettes during the pendency of the 1968 action that a substantial judgment could be entered against her. It was further alleged that Mettes urged Hoffman to convert all of her bank accounts to cash for safekeeping with Mettes. According to Hoffman $222,000 was turned over to Mettes and Stiles pursuant to this plan. After the 1968 action by the conservator was terminated, Mettes and Stiles refused to return the money in their safekeeping, resulting in the second court action.

In the 1971 suit of Hoffman v. Mettes and Stiles, the defendants were represented by attorney Richard E. Quinn. After negotiations between the parties and their attorneys a stipulation was entered on June 4, 1980, whereby Hoffman was to receive $125,000 in cash and a quitclaim deed releasing the life estate of Mettes in a certain 250-acre Peoria County farm. By the same agreement Mettes received certain leasehold rights in the 250 acres.

Thirteen days after the stipulation was filed with the court Hoffman filed a petition for rule to show cause which recited the following allegations:

"Your Petitioner, ADELE HOFFMAN, respectfully represents unto the Court:

1. That she is Plaintiff in the above-entitled cause.

2. That on August 17, 1971, a Complaint was filed with the Clerk of the Circuit Court charging Defendants, MARY METTES and WILLIAM STILES, with unlawfully obtaining from Plaintiff the sum of Two Hundred Twenty-two Thousand Dollars ($222,000.00) in U.S. currency.

3. That thereafter Five Thousand Dollars ($5,000.00) of said money was recovered from the premises of Defendant, WILLIAM STILES, commonly known as 2410 Lincoln Avenue, Peoria, Illinois.

4. That on August 28, 1972, Defendants filed an Answer to Plaintiff's Complaint denying the charges alleged in Plaintiff's Complaint.

5. That on December 21, 1971, Defendant, MARY A. METTES, under oath and in response to oral interrogatories propounded by SAMUEL G. HARROD, Esq., Attorney for Plaintiff, further

denied that she had any knowledge of the Two Hundred Seventeen Thousand Dollars ($217,000.00) rightfully belonging to Plaintiff.

6. That on June 4, 1974, this cause was reached for Trial; however, a certain Agreement was entered into between the parties, which Agreement is part of this Record, a copy of which is attached hereto and made a part hereof, at which time Defendants, MARY A. METTES and WILLIAM STILES, further denied any knowledge of the Two Hundred Seventeen Thousand Dollars ($217,000.00) rightfully belonging to Plaintiff.

7. Your Petitioner has since learned that on Wednesday, June 12, 1974, said Defendants did present themselves at the MID-CITY NATIONAL BANK OF CHICAGO, 801 West Madison Street, Chicago, Illinois, and cashed ten (10) one thousand dollar bills, four (4) of which have specifically been identified as those delivered to Plaintiff, ADELE HOFFMAN, by the PROSPECT NATIONAL BANK, Peoria, Illinois on August 11, 1971, bearing serial numbers G00197963A, G00046800A, G00036538A, and G00006445A, same being the property of Plaintiff.

8. Petitioner has further been informed that said Defendants, MARY A. METTES and WILLIAM STILES, appeared at the MID-CITY NATIONAL BANK OF CHICAGO, on Friday, June 14, 1974, in an endeavor to cash Twenty-five (25) one thousand dollar bills."

The petition proceeded to request that the court void the stipulated agreement previously entered into by the parties, suggesting that the alleged misrepresentations of Mettes provided a basis for such action. Further, Hoffman's petition sought to have Mettes and Stiles found in contempt of court. After a hearing on Hoffman's petition and the allegations contained therein, the trial court held that the stipulated agreement should be "set aside and held for naught."

It is apparent from our review of the record that the court below relied on the principle of law which permits agreements of compromise or settlement to be set aside where such agreements have been procured by false and fraudulent representations. (See, e.g., 11 Ill. L. & Prac. Compromise & Settlement §11 (1955).) The finding of the trial court that the stipulated agreement should be set aside for the reasons alleged in the Hoffman petition was not objected to nor appealed from. Indeed, a second settlement agreement less favorable to the defendants, Mettes and Stiles, was reached by the parties and ratified by the court, after which the 1971 action was dismissed with prejudice.

The instant lawsuit, the third in this saga, was initiated by Mettes against her former attorney Quinn. In her complaint, Mettes alleges that

Quinn breached his fiduciary duty to Mettes as her attorney and as a result of that breach Mettes was denied the benefit of the more favorable June 4 settlement. Specifically, Mettes alleges that Quinn advised her to satisfy the settlement obligation of June 4 by cashing the numbered currency which had been received from Hoffman in 1968. Mettes argues that Quinn knew or should have known that such action would subject her to charges of fraud sufficient to set aside the favorable agreement.

The court below considered the substance of the Mettes complaint and upon motion of the defendant Quinn dismissed the complaint for failure to state a cause of action. Plaintiff Mettes believes the lower court's determination was wrong and has appealed to this court.

We can offer no relief to the plaintiff. The Circuit Court ordered the stipulated agreement of June 4 set aside because it was sufficiently tainted by the false and fraudulent representations of the plaintiff here, Mary Mettes. Mettes would now have us allow a recovery from her attorney because his faulty advice caused her fraud to be uncovered in such a way that she could no longer benefit therefrom. Whether Mettes received negligent advice from Quinn is immaterial to our decision, for the essence of her prayer is that she be permitted to benefit from her fraud.

> "It has been the policy of the courts to refuse their aid to anyone who seeks to found his cause of action upon an illegal or immoral act or transaction. This refusal to aid derives not from the consideration of the defendant, but from a desire to see that those who transgress the moral or criminal code shall not receive aid from the judicial branch of Government. *Hunter v. Wheate*, 289 Fed. 604; *Levy v. Kansas City, Kansas*, 168 Fed. 524; *Downing v. City of Jackson*, 199 Miss. 464; *Newton v. Illinois Oil Co.*, 316 Ill. 416." (*Bonnier v. Chicago Burlington & Quincy R.R. Co.* (1953), 351 Ill. App. 34, 52-53, 113 N.E.2d 615, 622, *rev'd on other grounds* (1954), 2 Ill. 2d 606, 119 N.E.2d 254, *cert. denied* (1954), 348 U.S. 830, 99 L. Ed. 655, 75 S. Ct. 53.)

We pass no judgment on the advice given by the defendant Quinn, as our refusal to aid Mettes is a decision reached without regard to the wisdom or propriety of his counsel. A long and unbroken series of precedents establishes the rule that courts will not aid a fraudfeasor who invokes the court's jurisdiction to profit from his own fraud by recovering damages. (*Tovar v. Paxton Community Memorial Hospital* (1975), 29 Ill. App. 3d 218, 330 N.E.2d 247; *Bonnier v. Chicago, Burlington & Quincy R.R. Co.*; *Kessinger v. Standard Oil Co.* (1925), 245 Ill. App. 376; *Haumesser v. Central Brewing Co.* (1910), 158 Ill. App. 648; *Devor v. Knauer* (1899), 84 Ill. App. 184.) Such is precisely the thrust of the plaintiff's action in the case at bar and no error was committed by the court below in dismissing same with prejudice.

In her brief the plaintiff also assigned as error the trial court's denial of granting her an opportunity of filing another amended complaint. During oral argument before this court counsel for plaintiff waived this issue. Such waiver was proper, for no amendment of the averments could improve the position of a litigant who prays for abetment of fraud. *Westgate Terrace Community Associates, Inc. v. Burger King Corp.* (1978), 66 Ill. App. 3d 721, 383 N.E.2d 1355.

For the reasons expressed above, and after a thorough review of the record and briefs of counsel, we affirm the decision of the Circuit Court dismissing plaintiff's complaint.

Affirmed.

STOUDER and STENGEL, JJ., concur.