**BREEZEVALE LIMITED, Appellant,**

v.

**Timothy L. DICKINSON,**
**et al., Appellees.**

**No. 97–CV–2076.**

District of Columbia Court of Appeals.

Argued En Banc April 19, 2001.

Decided Oct. 18, 2001.

Stephen D. Susman, Houston, TX, with whom Leslie A. Powell and Diana M. Schobel, Frederick, MD, were on the brief, for appellant.

Theodore J. Boutrous, Jr., with whom Jonathan K. Tycko, Hassan A. Zavareei, Washington, DC, and John H. Sharer were on the brief, for appellees.

Before TERRY, STEADMAN, SCHWELB, FARRELL, RUIZ, REID, and WASHINGTON, Associate Judges.*

ON REHEARING EN BANC

STEADMAN, Associate Judge:

Before us for en banc review is a legal malpractice action brought against the law firm of Gibson, Dunn & Crutcher LLP ("GDC")[1] by that firm's former client, Breezevale Limited ("Breezevale"). A jury found that GDC had mishandled a lawsuit filed by Breezevale against Bridgestone Firestone, Inc. and Firestone Export Sales Corp. (collectively "Firestone"), resulting in $3,430,000 in damages. The damage award reflected the amount that Breezevale hypothetically would have won had its case against Firestone gone to a jury instead of settling due to GDC's alleged malpractice.

Citing evidentiary insufficiency, the trial court set aside the jury's verdict and entered judgment as a matter of law in favor of GDC. In the alternative, the court granted a new trial. Further, the trial court concluded that Breezevale had engaged in bad faith litigation and ordered it to pay GDC $5,356,633 in fees and costs, punitive damages, and unpaid legal fees. On initial appeal by Breezevale, a division of this court reversed the entry of judg-

---

* Chief Judge Wagner and Judge Glickman have recused themselves from this case.

1. More precisely, Breezevale brought suit against the partners of the firm, who are the actual appellees. For convenience, we refer to the firm as a collective singular appellee.

ment as a matter of law insofar as it relates to two of the three claims underlying the litigation, but affirmed the entry of judgment as to the third underlying claim. In addition, the division remanded the grant of a new trial for further consideration, and vacated without prejudice the order awarding sanctions for bad faith litigation and unpaid legal fees. *Breezevale Ltd. v. Dickinson,* 759 A.2d 627 (D.C. 2000).[2]

We granted GDC's petition for rehearing en banc primarily to consider its contention that, as a matter of law (or, more precisely, of policy), Breezevale should be absolutely barred from suit against its attorneys because the jury and later the trial judge (he by clear and convincing evidence) found that Breezevale, without GDC's knowledge, had forged documents in an attempt to bolster its underlying suit for breach of contract in which GDC had represented it. GDC bases its estoppel argument upon the principle that "[n]o court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act." *Hunter v. Wheate,* 53 App. D.C. 206, 208, 289 F. 604, 606 (1923).

We have considered this argument carefully, but find ourselves unable to agree with the sweeping nature of an assertion that regardless of malpractice, a client who engages in wrongdoing in connection with any aspect of litigation thereby as a matter of law forfeits all rights of recovery against the attorney. Matters must be judged in relative context and with an eye to other available measures of compensation and sanction.

In *Hunter* itself, for example, the wrongdoing went to the very core of the entire situation. The plaintiff sought malpractice damages from a surgeon who, at her behest, performed a then-illegal abortion of her fetus. Just as the law will not enforce an unlawful contract, so the woman as the participant in the illegal transaction could not make it the basis of a tort recovery. Likewise in another case stressed by appellees, *Mettes v. Quinn,* 89 Ill.App.3d 77, 44 Ill.Dec. 427, 411 N.E.2d 549 (1980), the plaintiff lost the advantage of a favorable settlement which resulted from her fraud and then tried to recover from her attorney because his allegedly faulty advice caused her fraud to be uncovered in such a way that she could no longer benefit therefrom. The acts of Breezevale here simply do not have that same degree of overall centrality to the damages, as illustrated by the significant verdict returned by a jury wholly informed of Breezevale's wrongdoing.

Furthermore, recognition must be made of the important role of trial court discretion that we have recognized in this entire area, including in the division opinion in the case now before us. *See also, e.g., Bredehoft v. Alexander,* 686 A.2d 586, 589 (D.C.1996) (imposition of sanctions under inherent power reviewed for abuse of discretion, citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 55, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)); *Chevalier v. Moon,* 576 A.2d 722, 724 (D.C.1990) (discretionary review of trial court award of attorneys fees for bad faith and misrepresenting facts). Here, the trial court did not rely on the *Hunter* principle in entering judgment for GDC. Furthermore, for the reasons stated in the panel opinion, we are vacating the exercise of the trial court's sanction power in awarding compensation to GDC and remanding the case for fur-

---

**2.** Judge Schwelb joined the division opinion but wrote a concurring opinion expressing further views on the nature of the misconduct and the question of sanctions. 759 A.2d at 640–43. Judge Schwelb, joined now by Judge Terry, adheres to the views expressed in his concurring opinion when the case was before the division, especially with respect to GDC's "estoppel" argument. *Id.* at 642–43 n. 3.

ther proceedings, including consideration of appropriate sanction actions to reflect Breezevale's conduct. We decline GDC's invitation that we now rule Breezevale to be barred as a matter of law from any recovery whatever against GDC. In all other respects, we leave the sanctions in the discretionary hands of the trial court upon remand.[3]

As has been our normal practice, the division opinion in this case was vacated when we granted the petition for rehearing en banc. 769 A.2d 133 (D.C.2001). Neither party has persuaded us to depart from the division's disposition of the case.[4] Therefore, essentially for the reasons set forth in the division's opinion, we adopt and reaffirm the appellate rulings as ordered in the final paragraph of that opinion. 759 A.2d at 640.

**3.** Appellant repeats to us its complaint to the division about an insufficient evidentiary hearing on the issue of sanctions. Since that order has been vacated, it would be premature to prejudge whatever proceedings in this regard the trial court may decide to follow on remand. Also, appellant now suggests that if remanded the case should be assigned to a different judge. No such argument was ever made to the division and we need not address it for the first time on a "rehearing" en banc. In any event, we discern no substantive merit in Breezevale's belated suggestion.

**4.** GDC particularly disputes, for essentially two reasons, the conclusion that the jury could find proximate cause. First, it asserts that Breezevale presented no evidence from which the jury reasonably could infer that its executives would have accepted the advice to withdraw the documents and interrogatory answers, because that would have impliedly admitted the forgery which they consistently denied. But the action need not have been so viewed. The jury reasonably could have found that an informed Breezevale might well have perceived the immateriality of the al-

leged forgeries to the strength of its case against Firestone—something the malpractice jury later confirmed—and had other options besides effectively conceding the expected motion to dismiss as Breezevale did by accepting a grossly reduced settlement offer. That in essence was an implication of the testimony of Breezevale's expert, and the jury could have found it persuasive. Second, GDC argues that Breezevale adduced no testimony that it could have survived a dismissal motion before the Ohio trial even if adequately represented. The suggestion is that Breezevale was obliged to present expert testimony, which it did not, tending to disprove the likelihood that the Ohio judge would have imposed sanctions terminating or greatly weakening its case, wholly or in part. We do not think Breezevale's burden of proving causation went so far. Breezevale showed, by legally sufficient evidence, that GDC's malpractice left it with no practical choice but to accept GDC's advice to settle. The relative likelihood that dismissal could not have been averted anyway was, in our judgment, a matter for GDC to establish, if it chose to, as part of its defense.