John B. MARBOAH a/k/a Charles
A. Boateng, Appellant,

v.

Alan J. ACKERMAN, et al., Appellees.

Nos. 03–CV–1378, 03–CV–1413,
and 03–CV–1414.

District of Columbia Court of Appeals.

Argued March 10, 2005.

Decided June 30, 2005.

Benjamin J. Trichilo, Fairfax, VA and
Saundra Jack, for appellant.

John Tremain May, Washington, DC,
for appellee Alan J. Ackerman.

Shirlie Norris Lake, Washington, DC,
for appellee Stien, Braunstein & Associates, P.C.

Before SCHWELB and GLICKMAN,
Associate Judges, and DUNCAN–
PETERS, Associate Judge, Superior
Court of the District of Columbia.[*]

SCHWELB, Associate Judge:

This legal malpractice case is based on a claim by plaintiff John Brobbey Marboah that defendants Alan J. Ackerman, Esq., and Ackerman's now-dissolved law firm, Stien, Braunstein & Associates, P.C. (SBA), negligently permitted the statute of limitations to expire without filing a workers' compensation claim on Marboah's behalf with the Virginia Workers' Compensation Commission. Marboah appeals from an order of the trial court awarding summary judgment in favor of the defendants. Because Marboah was an illegal alien—a fact that he fraudulently concealed from his employer, the Commission, the defendants, and the court—he was ineligible under then-current Virginia law to recover workers' compensation. Accordingly, even assuming, *arguendo*, that the defendants were negligent in representing Marboah, he suffered no compensable loss as a result of their negligence, and he is not entitled to any recovery.

At the time of the accident for which he was seeking workers' compensation, Marb-

---

[*] Sitting by designation pursuant to D.C.Code   § 11–707(a) (2001).

oah was ineligible for any award under Virginia law because, as an illegal alien who had overstayed his visa, he was not an "employee" at all for purposes of the state's workers' compensation statute. Marboah intentionally and fraudulently concealed his ineligibility from his employer and from the workers' compensation carrier by using the social security card and number of a man named Charles A. Boateng and by pretending that he was Boateng. In his deposition almost four years later, Marboah referred to Boateng as his "ghost identity." Marboah maintained his masquerade for more than three years.

Because Marboah was barred by law from receiving compensation benefits, he presented his claim in the name of Charles A. Boateng. Believing that the injured person was in fact Boateng, the employer and the employer's compensation carrier accepted the claim in that name and under Boateng's social security number. Marboah could obtain benefits, however, only if the Virginia Workers' Compensation Commission remained unaware of two key facts: first, that the claimant, who purported to be Charles A. Boateng, was really an ineligible illegal alien named Marboah; and second, that Marboah had fraudulently concealed his true identity and his ineligibility from his

employer and from the employer's carrier. Furthermore, because exposure of the truth would have been fatal to Marboah's claim and would have rendered him ineligible for compensation, Marboah felt compelled to adhere to his false story, so that his initial false statements snowballed with the passage of time. Marboah's misrepresentations to the employer and to the carrier regarding his true identity and illegal status were followed by further lies to his original attorneys (defendants Ackerman and SBA), to his present counsel, to the Immigration and Naturalization Service (INS),[1] and to the Superior Court.[2]

"To decide this case we need look no further than the maxim that no man may take advantage of his own wrong." *Glus v. Brooklyn E. Dist. Terminal,* 359 U.S. 231, 232–33, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). This principle is "[d]eeply rooted in our jurisprudence," and has been applied "in many diverse classes of cases by both law and equity courts." *Id.* It is not easy to envisage a more apt example of an attempt by a man to take advantage of his own wrongful acts "and [to] become the richer for it," *Riggs Nat'l Bank of Washington, D.C. v. District of Columbia,* 581 A.2d 1229, 1253 (D.C.1990), than Marboah's series of deceptions as his claim for compensation progressed. At every point, telling the truth—namely, that he was an

---

1. Marboah's misrepresentations to the INS, however, were the converse of his lies to his employer, attorneys, and the court. Correctly identifying himself as Marboah (not Boateng), he falsely told the INS, under oath, that he had never worked in the United States. See pages 6–7, *infra.* Marboah thus put himself in the incongruous situation of seeking to recover compensation for a workplace accident in Virginia but swearing that he had never worked there!

2.
   Oh, what a tangled web we weave
   When first we practice to deceive.
   SIR WALTER SCOTT, LOCHINVAR (1808). As the reader will discern in the pages that follow,

the web of deception woven by the plaintiff in this case was indeed a tangled one as he told one series of lies as "Boateng" and a different set of lies under his true name.

In his brief on appeal, counsel for Marboah asserts that "Marboah's only transgression, which he readily admits, is obtaining employment while using a friend's 'green card.'" As our exposition of the facts reveals, there have been quite a few more "transgressions" than that, some of them even more serious than the not so trivial one that Marboah "readily admits" after having concealed it for almost four years.

illegal alien named Marboah, and thus not an employee eligible for compensation—would have precluded recovery. Consequently Marboah lied, representing to all concerned that his name was Charles Boateng, that he was legally in this country, and that he was therefore eligible for workers' compensation. In light of the *Glus* maxim, and because "no court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act," *Hunter v. Wheate*, 53 App.D.C. 206, 208, 289 Fed. 604, 606 (1923); *see also Breezevale, Ltd. v. Dickinson*, 783 A.2d 573, 574 (D.C.2001) (en banc) (quoting *Hunter*), we affirm the award of summary judgment.

## I.

Marboah was born in Ghana. He is a citizen of the Netherlands. A woman who has lived with him as his wife resides in this country with one of his children; the child was born in Virginia and is a United States citizen.[3]

In October 1998, Marboah came to the United States under the Visa Waiver Pilot Program (VWPP), which permits nationals of certain countries, including the Netherlands, to enter the United States, as tourists only, for no more than ninety days. Individuals who visit the United States under the VWPP are not permitted to engage in gainful employment, and Marboah acknowledged that he was aware of this fact.

In December 1998, while he was still lawfully in the United States, Marboah met Charles A. Boateng at a social gathering. According to Marboah, Boateng had a valid work visa. Out of what Marboah supposed to be "remorse" for Marboah's plight in being unable to work, Boateng gave Marboah his (Boateng's) social security card so that Marboah could use it in order to find employment. Marboah testi-

fied at his deposition that he never saw Boateng again and did not know his whereabouts. In any event, before his visa had expired, Marboah contrived to use a false identity (that of Boateng) to secure employment, when he knew that working in the United States would contravene the terms of his visa. Moreover, contrary to a representation that he necessarily made to obtain his visa—namely, that he proposed to visit the United States for no more than ninety days—Marboah obviously intended to remain and work in this country indefinitely. Marboah was thus well aware that ninety days following his arrival he would become an illegal alien.

In February 1999, by which time he had already overstayed his ninety-day visa, Marboah, using Boateng's name and social security number, secured employment with Smoot Lumber Company, in Alexandria, Virginia, in the name of Charles A. Boateng. Marboah took some tests and filled out a series of employment forms, all in the name of Charles A. Boateng. Marboah also used Boateng's social security card, and he did not reveal his real name to his employer.

A few weeks later, on April 7, 1999, while working for Smoot Lumber, Marboah was struck in the head with a steel pipe and seriously injured. He filed a compensation claim with Smoot Lumber's compensation carrier, Liberty Mutual, again using the name and social security number of Charles A. Boateng. On April 22, 1999, Marboah, continuing to hold himself out to be Charles A. Boateng, retained defendants Ackerman and SBA to represent "Boateng" in connection with "Boateng's" claim for any compensation benefits to which he was entitled as a result of the accident that had occurred fifteen days earlier. Marboah signed the retainer agreement as Charles A. Boateng. Marb-

---

**3.** Marboah's second child lives in the United Kingdom.

oah never advised his attorneys that he was really John B. Marboah, that he was an illegal alien not eligible for workers' compensation, or that he was using another man's social security card and number.

Marboah's claim (ostensibly filed by "Boateng") was accepted as compensable by Smoot Lumber's workers' compensation carrier, Liberty Mutual. Marboah never apprised Liberty Mutual of his true identity, and, having no reason to question the claimant's eligibility or his assertion that he was in fact Boateng, Liberty Mutual paid compensation benefits to "Boateng," designated a panel of physicians to examine "Boateng," and paid "Boateng's" medical expenses. Although the compensation benefits and payment of medical expenses were intended for "Boateng," and although, as an illegal alien, Marboah had no right to the payments, it appears to be undisputed that Marboah retained the money that he was paid.[4]

Following his accident, Marboah remained in the United States illegally for approximately three more years. In early April 2002, Marboah left the United States and traveled to Amsterdam. He returned on April 19, 2002. He left the country again on June 21, 2002, and flew to Toronto, Ontario. When he attempted to return to the United States, Marboah, who was using his true name, was interviewed under oath in Toronto by an officer of the INS. During this interview, Marboah stated, *inter alia,*

Q. Do you swear that all the statements you are about to make will be the truth and nothing but the truth?

A. Yes.

* * *

Q. Who is your employer and what is your occupation?

A. I am not working.

Q. When was the last time you worked?

A. Never in the [S]tates, never in Canada. In March of 2002. I am a cleaner of warehouses.

* * *

Q. What kind of work were you doing in the [S]tates from your admission on Oct. 3, 1998?

A. I never worked.

By the time that Marboah denied, under oath, that he had ever worked in the United States, he had filed both his claim for workers' compensation and the action for malpractice that arose from this claim. However, the man who denied that he had ever worked in the United States called himself John B. Marboah; the man who filed for workers' compensation claimed to be Charles A. Boateng. Thus, Marboah represented in the workers' compensation case that Boateng was employed by Smoot Lumber Co. (when in fact Boateng was not), and swore in Toronto that he (Marboah) had never worked in the United States, although in fact he not only did work in this country but also filed a workers' compensation claim using Boateng's name.

Following the interview during which Marboah made these false statements under oath, the INS determined that he had remained in this country illegally for more than three years, in violation of the conditions of his VWPP visa. Marboah was denied entry to the United States and barred from reentering for a period of ten

---

**4.** Assuming that the benefits and medical expenses, as well as "Boateng's" wages, were paid with checks made out to Charles A. Boateng, the question arises regarding how Marboah succeeded in negotiating these checks. The record does not disclose the answer, and at oral argument, Marboah's attorney did not know whether Marboah, pretending to be Boateng, simply endorsed the checks with Boateng's name.

years. Marboah has applied for a waiver of the ten-year ban, but his application has been denied.

## II.

On April 15, 2002, Marboah, having retained his present counsel (to whom he also represented himself to be Charles A. Boateng), instituted this action for legal malpractice against SBA and Ackerman. The suit was brought in the name of Charles A. Boateng, and the complaint makes no mention of John B. Marboah. The complaint alleges that "Boateng" suffered personal injury, that "Boateng" retained the defendants in connection with a workers' compensation claim, and that the defendants failed to exercise due care in their representation of "Boateng." The complaint concludes with a demand for a very substantial award for "Charles A. Boateng":

> WHEREFORE, the plaintiff, Charles A. Boateng, moves for judgment, jointly and severally, against the defendants, Alan J. Ackerman and Stien, Braunstein & Associates, P.C., in the amount of $5,000,000.00 (FIVE MILLION DOLLARS), with interest commencing April 22, 1999, and the costs of these proceedings.
>
> THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.
>
> CHARLES A. BOATENG,
>
> Plaintiff

By Counsel

The nature of "Boateng's" claim is described as follows in one of Marboah's briefs:

> Marboah's claim was accepted as compensable by Smoot Lumber's workers' compensation carrier, Liberty Mutual. It paid compensation benefits, designated a panel of physicians and paid medical expenses. (R–817–818) A Memorandum of Agreement was prepared and forwarded to Ackerman on behalf of Marboah. (R–809–810) This Memorandum of Agreement, had it been endorsed by Marboah and forwarded to the Virginia Workers' Compensation Commission, would have entitled him to an award of continuing disability and lifetime medical benefits. It was not necessary for Marboah to take any further action or provide any supplemental information; he simply needed to return the Memorandum of Agreement and an award would have been entered for him. Ackerman, however, never informed Marboah that he had received the Memorandum of Agreement. He never presented the Agreement to Marboah for signature. He never submitted the form to the Commission. As a result of the defendants' decision to do nothing when the Memorandum was received, Marboah forever lost his claim to workers' compensation benefits due to the expiration of the statute of limitations.[5]

---

**5.** The defendants' position with respect to these allegations is stated as follows in Ackerman's brief:

> There is a dispute, however, as to why no claim was filed by the Attorneys. Ackerman submits that Marboah was notified on two separate occasions that the firm and Ackerman would not be representing him in connection with his claims. Ackerman submits that Marboah was advised of the statute of limitations and that sufficient time remained for Marboah to obtain new counsel and file his claim. Marboah, on the other hand, claims either that he was

not advised of these facts, or that he was advised of them but persuaded Ackerman to continue to represent him. This dispute, however, was not material to the Motion for Summary Judgment. The only question presented in the Motion was whether or not the plaintiff was entitled to workers' compensation benefits.

(Footnote omitted.) The defendants also point out that Mr. Ackerman's correspondence with Marboah was addressed to "Charles Boateng" and that Ackerman only knew Marboah as Boateng.

The Memorandum of Agreement to which reference is made in the foregoing passage had been forwarded to Mr. Ackerman and bore the name of "Charles A. Bo[a]teng," as well as Mr. Boateng's social security number. Mr. Marboah did not have a social security number at all.

For almost a year after the suit was brought, the plaintiff continued to be known to the defendants (and to his own counsel) solely as Charles A. Boateng. The defendants noticed "Boateng" for deposition and for an independent medical examination (IME) in the District of Columbia, where "Boateng" had filed his action. Counsel for "Boateng" sought several postponements, to which the defendants initially consented. As it turned out, these postponements were requested because, as a result of his immigration problem, the plaintiff was unable to travel to the United States to participate in the litigation. When Marboah's immigration attorney was unable to have the ten-year ban lifted, some of Marboah's unusual circumstances gradually came to light. In September 2002, Marboah decided to tell his attorney his true identity; he explained at his deposition that "I didn't want to live under that ghost name, okay."

In late February 2003, "Boateng" filed Supplemental Answers to Interrogatories in which he indicated that he had "also used" the name "John B. Marboah." In May 2003, the plaintiff moved to amend the caption of the case to reflect his true name, and the trial judge granted the motion over the objection of the defendants.

Pretrial proceedings then continued, with Marboah's name on the pleadings as well as Boateng's. After the parties had completed discovery,[6] the defendants Ackerman and SBA filed separate motions for summary judgment. The motions were based on two principal grounds:

1. that even assuming, arguendo, that the defendants were negligent in their representation of Marboah, Marboah could not establish that their negligence caused any loss to him, because as an illegal alien, Marboah was not entitled to workers' compensation benefits which he claims that the defendants negligently failed to secure for him; and

2. that the court should not assist Marboah in his perpetration of what the defendants alleged to be fraud.[7]

On October 22, 2003, the judge granted Ackerman's motion for summary judgment in a concise and well-reasoned order.

6. During discovery, as we have noted, the defendants requested that Marboah appear for an IME and a deposition in the District of Columbia. When Marboah was unable to appear because he was barred from the United States, his counsel offered a number of alternative means of conducting the IME and the deposition. The defendants moved to dismiss the action on the grounds of failure to prosecute, arguing that Marboah's inability to appear in the District was the result of his own misconduct in overstaying his visa and violating its terms. The judge denied the motion and granted plaintiff's motion for a protective order. Marboah was ultimately deposed and examined (by British doctors) in London, where he was residing.

After Marboah filed his appeal, both of the defendants cross-appealed from the denial of

their motions to dismiss and from the protective order granted by the trial court. Because we are affirming the trial judge's award of summary judgment in favor of the defendants, the cross-appeals are now moot. The judge awarded the defendants costs in the amount of $11,426.69, which apparently included travel to and from London for Marboah's deposition, as well as hotel costs. Marboah has not appealed from the award of costs, nor has he made the award of costs a part of his appeal from the award of summary judgment to the defendants.

7. SBA, which had dissolved more than two years before the complaint was filed, also contended that the suit against it was time-barred. We do not reach that issue.

Quoting *Niosi v. Aiello*, 69 A.2d 57, 60 (D.C.1949), the judge wrote that an attorney "is not liable for negligence if, notwithstanding the negligence, the client had no cause of action or meritorious defense as the case may be." The judge noted the decision of the Supreme Court of Virginia in *Granados v. Windson Dev. Corp.*, 257 Va. 103, 509 S.E.2d 290 (1999), a case which was decided three months before Marboah's accident. In *Granados*, the court held that the plaintiff, an illegal alien, could not lawfully be employed in the United States, that he was not an "employee" within the meaning of Virginia's workers' compensation statute, and that he was therefore ineligible to receive benefits.[8] The judge continued:

> Plaintiff argues that because the workers' compensation insurer, Liberty Mutual, accepted Plaintiff's status under the Act as well as the compensability of the claim, the *Granados* defense was waived. *See* Opposition at 10–11.
>
> One fatal flaw to Plaintiff's argument is that he made a false representation when he filed his Workers' Compensation claim in another person's name, Charles Boat[e]ng. Liberty Mutual, the insurance carrier, accepted *Charles Boateng's* claim for Workers' Compensation benefits, not *John Marboah's* claim. *See* Opposition, Exh. 3 (emphasis added).

As in *Granados*, Plaintiff admitted that he was ineligible for employment on both the date he began work and on the date he sustained the injury. *See* Motion, Exh. C at 90–91. Plaintiff acknowledges that he is not Charles Boateng. *See* Plaintiff's Statement of Undisputed Facts at ¶ 6. Plaintiff admitted that he was using Charles Boateng's social security number to obtain employment because Plaintiff knew that his illegal status preempted him from finding employment [i]n the United States.

> \* \* \*

Plaintiff does not dispute that between 1998 and April 2002, he was in the United States illegally. *See* Motion, Exh. C at 90–91. Therefore, as a matter of law, Plaintiff was not entitled to Workers' Compensation benefits under the Act and as a result suffered no injury. Thus, Plaintiff has failed to prove that the Defendant proximately caused Plaintiff's loss of his Workers' Compensation benefits. Indeed, Plaintiff had no legal interest in Virginia Workers' Compensation benefits. Accordingly, there are no genuine issues of material fact in dispute, Summary Judgment is granted in favor of Defendant Ackerman and against Plaintiff.

In a separate one-page order, the judge also granted summary judgment in favor of SBA. This appeal followed.

---

**8.** In *Granados*, the illegal alien presented forged documents to obtain employment. He subsequently suffered an accident. The court held that he was ineligible to receive compensation benefits because he could not be lawfully employed, and therefore was not an "employee" for workers' compensation purposes. The court declined to ground its holding on the plaintiff's deception in securing his employment, holding that his failure to disclose his identity and status as an illegal alien was not sufficient to demonstrate the existence of a causal relationship between the employee's work-related injury and his misrepresentation. 509 S.E.2d at 292 (citing

*Prince William County Serv. Auth. v. Harper*, 256 Va. 277, 504 S.E.2d 616, 617 (1998)).

Marboah, like the plaintiff in *Granados*, did not qualify as an employee for workers' compensation purposes. There is, however, a significant difference between the two cases with respect to the extent of the deception. The plaintiff in *Granados* acknowledged his forgery, as well as his status as an illegal alien, before the Commission. Marboah, on the other hand, continued his deception by misrepresenting his eligibility for compensation to the Commission, to the defendants, to his present counsel, and in his complaint and other papers filed in the Superior Court.

## III.

The dispositive facts in this case are not in dispute, and the sole issue is whether, as the trial judge held, the defendants were entitled to summary judgment as a matter of law. We conclude that they were. Any purported entitlement that Marboah could have had to workers' compensation was founded upon misrepresentation and fraud as to his eligibility for compensation, and this court will not aid Marboah to vindicate that fraud-induced entitlement through this action for legal malpractice. Accordingly, we decline to permit Marboah to recover, as damages from his attorneys, "lost" workers' compensation which the defendants' negligence allegedly prevented him from recovering, but to which in fact he was not legally entitled at all. If Marboah had not concealed the truth, *inter alia,* from his employer, from the employer's carrier, and from the defendants (who were his attorneys in the workers' compensation claim), his claim would never have been favorably considered, for as a matter of law under *Granados,* Marboah's status as an illegal alien would have disqualified him from any recovery.[9]

Marboah's misrepresentations continued after he sought legal representation. In retaining Ackerman and SBA to represent him in the workers' compensation matter, he presented himself as Charles A. Boateng, and he signed Boateng's name to the retainer agreement. Obviously, Marboah did not inform his attorneys that he was in fact an illegal alien, ineligible for compen-

sation, that his name was Marboah and not Boateng, or that he had secured his employment with Smoot Lumber by impersonating Boateng and using Boateng's social security card and number. If Marboah had disclosed the truth to Mr. Ackerman, the defendants could not ethically have presented Marboah's claim to the Virginia Workers' Compensation Commission. Accordingly, Marboah once again lied.

In his brief on appeal, defendant Ackerman correctly describes the legal quandary in which Marboah finds himself as a result of his own deceptions and misrepresentations:

> In short, regardless of the allegations of negligence, Marboah could not prove that the alleged negligence proximately caused his damages.

The reason for this is simple. Marboah had no valid workers' compensation claim. As a result, he could not prove what is commonly referred to as the "case within the case." At the time the plaintiff was injured, he was working illegally in the United States under a false name and a false Social Security number. The injury occurred in the Commonwealth of Virginia, and, pursuant to the Virginia statute, persons not legally employed in the United States were not eligible for workers' compensation benefits. The fact was established by a case decided by the Supreme Court of Virginia on January 8, 1999. Marb-

---

**9.** Effective April 2000, the Virginia legislature amended the workers' compensation statute to provide that the term "employee" includes both legal and illegal aliens. Va.Code § 65.2–101. In *Mendoza–Garcia v. Cho Yeon Hwi,* 2001 WL 292316, 2001 Va.App. Lexis 158 (Va.Ct.App.2001), the court held that the amendments enacted in 2000 did not retroactively overrule *Granados:*

> [W]e are bound by the decision of the Supreme Court in *Granados.* The Court inter-

preted in that case the version of Code § 65.2–101 that was applicable to this case. We may not now ignore the Court's interpretation of the applicable law merely because of a subsequent change in the statute. The general rule is that a statute will always be construed as operating prospectively, rather than retrospectively, unless the legislature makes a contrary intent manifest. *Duffy v. Hartsock,* 187 Va. 406, 419, 46 S.E.2d 570, 576 (1948).

oah was injured on April 7, 1999. Although the statute was subsequently amended, that amendment was not made retroactive.

Marboah is therefore put in the impossible position of claiming that his attorney was negligent in failing to recover benefits to which he was not entitled. As a result, he falls back on the argument that, if his attorney had filed such a claim, he might have gotten away with it if no one had noticed. However, the *Granados* case makes [it] clear that legal employment is an affirmative element that must be proved by the claimant. Marboah could only have proved this affirmative element by engaging in a fraud, that is, passing himself off as a person other than himself with a Social Security number he did not possess.

Having failed to "get away with it" the first time, Marboah now attempts to enlist the aid of this Court in completing his fraud. This fraud goes to the very core of his claim and prevents this Court from lending its aid.[10]

No court should, and this court will not, entertain a claim which is so closely tied to the plaintiff's fraud and intentional misrepresentation, and which could not prevail unless the court accepted as true allegations which are false and which were known by Marboah to be false when he made them. In *Breezevale*, we concluded that the fabrication of documents in that case, though constituting an appropriate basis for the imposition of sanctions, was not sufficiently central to an otherwise partially meritorious claim to warrant the court from refusing to entertain the suit. *Breezevale*, 783 A.2d at 574–75. In so holding, however, we made it clear, citing *Hunter*, 53 App.D.C. at 208, 289 F. at 606, that the result would be different if the plaintiff's wrongdoing went to the very core of his action. We noted that

> in another case stressed by appellees, *Mettes v. Quinn*, 89 Ill.App.3d 77, 44 Ill.Dec. 427, 411 N.E.2d 549 (1980), the plaintiff lost the advantage of a favorable settlement which resulted from her fraud and then tried to recover from her attorney because his allegedly faulty advice caused her fraud to be uncovered in such a way that she could no longer benefit therefrom.

*Id.* The court in *Mettes* affirmed a judgment rejecting the plaintiff's claim:

> The very fact that Marboah brought a suit for $5,000,000 in the Superior Court and represented himself in the pleadings to be Charles A. Boateng suggests, at the very least, an unusual measure of audacity. Suppose that in the early stages of the litigation, before the plaintiff "Boateng" revealed his true identity, the defendants had made a $1,000,000 settlement offer and Marboah elected to accept it. Negotiation of the settlement check would have required Marboah to sign Boateng's name on the check. A request to the defendants to make the check payable to an unknown Marboah, instead of to the ostensible plaintiff "Boateng," would surely have raised an eyebrow or two on the defense side, and would perhaps have risked the collapse of the entire masquerade upon which Marboah's complaint was based.

**10.** Marboah's deceptions, as we have seen, did not end with his attempt to have Ackerman present a fraudulent claim on his behalf. After Marboah and the defendants came to a parting of the ways, Marboah secured new legal representation, again representing himself to be Boateng. In the complaint Marboah filed in the Superior Court as "Charles A. Boateng," he prayed that damages in the amount of five million dollars be awarded to "Charles A. Boateng," thus fraudulently representing himself to the Superior Court as someone that he was not. Marboah also responded, under oath, as "Boateng," to the defendants' interrogatories. Thus, there can be no doubt that the deceptions that began in 1999, relating both to Marboah's identity and to his ineligibility as an illegal alien to receive benefits, continued for almost four years thereafter, under oath, and in a judicial proceeding.

The Circuit Court ordered the stipulated agreement of June 4 set aside because it was sufficiently tainted by the false and fraudulent representations of the plaintiff here, Mary Mettes. Mettes would now have us allow a recovery from her attorney because his faulty advice caused her fraud to be uncovered in such a way that she could no longer benefit therefrom. Whether Mettes received negligent advice from Quinn is immaterial to our decision, for the essence of her prayer is that she be permitted to benefit from her fraud.

It has been the policy of the courts to refuse their aid to anyone who seeks to found his cause of action upon an illegal or immoral act or transaction. This refusal to aid derives not from the consideration of the defendant, but from a desire to see that those who transgress the moral or criminal code shall not receive aid from the judicial branch of Government.

*Id.* at 551 (citations and internal quotation marks omitted).

In the present case, there could have been no recovery of workers' compensation if the true facts had been disclosed. In his prayer for relief in the Superior Court, Marboah demanded that $5,000,000 be awarded to the man he was impersonating or, as he put it, to his "ghost identity"—an identity he had falsely assumed because he knew that, if he acknowledged his true identity, he would not be eligible for the workers' compensation that he now claims to have lost as a result of the defendants' negligence. Marboah's fraud is thus inseparable from his claim for compensation and from his lawsuit, and it has the requisite "degree of overall centrality," *Breezevale*, 783 A.2d at 574, to his claim for damages; it goes "to the very core of the entire situation." *Id.* As in *Mettes*, we are not prepared to vindicate that fraud by countenancing any award to its perpetrator, when, given the facts as they truly exist, he would be entitled to nothing.

## IV.

In Marboah's appeal (No. 03–CV–1378), the judgment is affirmed. The defendants' cross-appeals (Nos. 03–CV–1413 and 03–CV–1414) are dismissed as moot.

*So ordered.*[11]

---

11. Marboah relies heavily on the deposition testimony of two workers' compensation practitioners who opined that Ackerman was negligent when he failed to have the Memorandum signed by his client and presented to the Commission. One witness, James E. Swiger, testified that

> you get an award entered ASAP particularly on a case if you view that there's any weakness at all to the underlying case. You don't avoid the opportunity to snatch victory from the jaws of defeat. I think that was an opportunity that Mr. Ackerman missed in this case.

This presumes that Marboah, posing as "Boateng," was entitled to the award because he had successfully concealed his identity and ineligibility from his own employer, compensation carrier, and attorney, and thus from the Commission. We find this suggestion difficult to accept; an ineligible non-employee cannot lawfully recover workers' compensation by fraudulently concealing his ineligibility, and he is not entitled to the assistance of an attorney (and, *a fortiori*, of the court) in the perpetration of such deception and fraud.

Marboah also asserts that he received payments from the insurer and that this represented a "de facto" award of "vested rights" to Marboah, which rights the defendants forfeited by failing to act on his behalf in timely fashion. These payments, however, were procured by fraud; they were made to "Charles A. Boateng," not to Marboah, and they would not have been made at all but for Marboah's concealment of his ineligibility for workers' compensation.